OPINION OF THE COURT
Betty Weinberg Ellerin, J.
Defendants, who will hereinafter be referred to in the singular as the City, renew their motion to vacate the order entered on November 9, 1979 directing an inquest by reason of defendant’s default in appearing or answering. The original application for such relief was routinely denied without prejudice because the moving papers were inadequate on their face in not including an affidavit of merits. An identical motion to renew has also been brought in a companion case wherein Max Waldgeir is the plaintiff With respect to a similar order entered on the same date. Since the relevant facts are identical in both cases, both plaintiffs being represented by the same counsel, the motions are consolidated herein for the purpose of decision.
These motions are brought pursuant to CPLR 5015 (subd [a], par 1) on the ground that defendant’s default was “excusable” in that “the pendancy [sic] of negotiations between the parties at the time the default was entered constitutes a valid excuse for not timely answering the complaint”. Defendant’s own papers, however, fac *759 tually belie this conclusory assertion that negotiations were pending between the parties at the time of the default. While the moving papers allude to an unspecified date “in September” when the Assistant Corporation Counsel in charge of the case first contacted plaintiff’s attorney with respect to each matter “and informed him that the municipal defendants were interested in settling the case”, it is undisputed that such initial conversation, whatever its substance, and the parties disagree on this issue, took place after the time to answer had already expired, and that the next call from defendant’s counsel and the only settlement discussion between counsel for the parties took place many weeks later, after the orders directing inquests had been entered.
Other than the specious reference to “pendancy of negotiations between parties” there is no showing whatsoever of any facts that might constitute “excusable neglect” for defendant’s failure to timely interpose answers in these matters. Indeed, on oral argument it was candidly acknowledged that defendant was fully cognizant that the actions had been instituted and that its failure to timely answer or take other appropriate action was in no way due to any error, inadvertence or “law office failure” but was rather by reason of policy discussions within its own hierarchy to determine the posture to be taken in these matters.
Such unilateral internal discussions, even if in contemplation of settlement, cannot excuse the failure to interpose an answer where, as is concededly here the case, there has been no communication with the adverse party (cf. Pearce v Watson Co., 37 AD2d 686). Defendant, of course, did have available the simple expedient of seasonably seeking an extension of time either from defendant or the court (see CPLR 2004; cf. Keith v New York State Teachers’ Retirement System, 56 AD2d 671), if, indeed, good faith settlement negotiations were contemplated. This it failed to do. Instead, it ignored applicable procedural mandates until an inquest date was actually scheduled at which time it first moved to vacate its default.
We are confronted here with a conscious, intentional default by the City without any excusable basis whatso *760 ever. While sympathetic judicial recognition of the problems confronting a municipal law office hampered by severe budgetary restrictions has frequently resulted in indulgent allowances not readily granted to others, the instant situation is clearly unrelated to any such budgetary problems but rather demonstrates an arrogant disregard of the rules of practice applicable to all litigants. Nor does it appear to be an isolated instance of such conduct on the part of defendant’s counsel (see, e.g., Vina v City of New York, NYLJ, March 6, 1980, p 5, col 2 [Greenfield, J.]; Brady & Co. v City of New York, NYLJ, June 12, 1980, p 10, col 4 [Kassal, J.]), although it does appear to be a particularly egregious case in that no excuse is even attempted for its failure to interpose an answer or otherwise act until after the default had been entered. While cavalier disregard of court rules by any litigant is to be deplored, it is perhaps even less tolerable when engaged in by a defendant municipality and its public officials in light of the special responsibilities which they have to the public, a defendant, moreover, who manifests acute sensitivity to time requirements when seeking rigid and inflexible enforcement of such limitations against adversaries.
Our courts have traditionally exercised great liberality in the opening of defaults predicated upon strong policy considerations in favor of resolving lawsuits on their merits. To obtain such relief, however, the movant must factually demonstrate that the default was excusable, that it was not deliberate or willful and that there is a meritorious defense to the action (see Bishop v Galasso, 67 AD2d 753).
As already indicated, defendant here has failed to show either a valid excuse for the default or the absence of willfulness or deliberateness. Such factors take on added significance when viewed in the context of the untoward consequences stemming from the deliberate failure to interpose an answer in these cases. Not only have plaintiffs been caused inconvenience and unwarranted delay in obtaining a final resolution of their claims, but defendant’s behavior has also resulted in an undue imposition on the court’s resources by way of unnecessary and burdensome *761 motion practice — first, the original motions which were denied because defendant’s papers were deficient on their face and thereafter the instant renewal motions. Such needless additional “make-work” is especially untenable in light of the heavy calendar backlogs, particularly in City cases, which have necessitated the extraordinary measures now in effect throughout the court system to combat the delay and congestion which have for too long denied litigants their right to a prompt and timely day in court. To permit defendant to open its default under the circumstances herein would be in direct conflict with the goals of this ameliorative policy and would, in effect, constitute a judicial imprimatur of approval upon callous, conscious disobedience to the statutory timetable prescribed for the orderly and expeditious progress of litigation. While the imposition of costs payable to the opposing party has frequently been used as a condition for the opening of a default, in a situation of this kind costs, in any amount, would fail to adequately communicate the serious disapproval with which such conduct is viewed and the court’s determination not to countenance either willful, deliberate violations of the rules and procedures directed by the CPLR or manifest indifference to such mandates (cf. Barasch v Micucci, 49 NY2d 594).
While the foregoing finding with respect to defendant’s failure to establish that its default was excusable precludes the granting of the relief sought, it may also be noted that the moving papers are equally unpersuasive with respect to a “meritorious defense”. Defendant does little more than direct attention to the texts of various personnel orders and present its “interpretations” thereof. A review of the applicable personnel orders clearly indicates that rights vested under earlier orders would not be forfeited by the adoption of Personnel Order No. 78/9 dated January 13, 1978. The contrary interpretation by the First Deputy Comptroller flies in the face of the clear and unambiguous language of section 10 of that very order. Moreover, the “interpretations” put forward by defendant are further rendered infirm by the documentary exhibits submitted by plaintiffs in opposition to these motions. In any event, since each plaintiff on an inquest *762 must establish by appropriate proof his right to recover the particular amount sought, the relevant personnel orders will necessarily be scrutinized and interpreted by the court before whom such inquest is held. Defendant’s showing on the issue of merit certainly affords no compelling basis for vacating its conscious, deliberate default. To find otherwise on these papers would serve merely to reward defendant for its misconduct by permitting it to further delay the final resolution of plaintiffs’ claims.
Accordingly, defendant’s motions to vacate its defaults in this case and in the companion case of Waldgeir v Koch (Index No. 17999/79) are denied and the decisions in each case directing an inquest are adhered to in all respects, said inquests to be held on August 18, 1980.